UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 11-06-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| $64,723.00 IN UNITED STATES | ) | **MEMORANDUM OPINION** |
| CURRENCY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This forfeiture action presents the $64,000 (or more precisely, the $64,723) question: Who is entitled to the bundles of cash seized from a residence in Shelbyville, Kentucky?  Both the United States and claimant Maria Olvera seek summary judgment with respect to that issue. [Record Nos. 21, 24] However, due to unresolved factual issues, summary disposition is not appropriate in favor of either party.

**I.**

In early May 2010, Maria Olvera contacted local law enforcement officers to advise that her estranged husband, Enrique Olvera-Landaverde, and others were involved in drug trafficking activities in Jefferson County, Kentucky.  [*See* Olvera Dep. Tr., Record No. 21-2, pp. 10-11; Stone Aff., Record No. 21-3, p. 1]  In June 2010, Olvera moved to Nashville, Tennessee.  However, the following month, she returned to the residence she owned with Olvera-Landaverde at 738 Southville Pike, Shelbyville, Kentucky.  [Olvera Dep. Tr., Record No. 21-2, pp. 4-5]  At

-1-

the time of Olvera's return, the residence was still under construction.  [*Id.*, pp. 6-7; Stone Aff., Record No. 21-3, p. 2 ¶ 3]

While cleaning the house on July 27, 2010, Olvera discovered packages that she suspected contained illegal drugs.  [Olvera Dep. Tr., Record No. 21-2, pp. 7-8; Stone Aff., Record No. 21-3, p. 2 ¶ 2]  Following this discovery, she contacted Kentucky State Police Detective Eric Stone.  A search warrant for the residence was obtained, and a search was conducted.  During the search, officers discovered two plastic bags containing $64,723.00 in United States currency in a hallway near the kitchen area of the residence.  [Stone Aff., Record No. 21-3, p. 4 ¶ 7]  Additionally, officers discovered and seized approximately 850 pounds of marijuana in a separate location within the building.  [*Id.*, pp. 3-4 ¶¶ 6-7]

A.    **The Related Criminal Action**

On June 2, 2011, Olvera-Landaverde was indicted by a federal grand jury and charged with knowingly and intentionally possessing with intent to distribute 100 kilograms or more of a mixture or substance containing marijuana in violation of 21 U.S.C. § 841(a)(1).  The indictment also sought forfeiture of the currency found during the search of the residence on July 27, 2010.  [*See United States v. Enrique Olvera-Landaverde*, No. 3: 11-cr-07-DCR (E.D. Ky.), Record No. 1]  However, on November 14, 2011, the United States moved the Court to dismiss the indictment.  According to the government, issues arose as the case progressed that called into question its ability to meet its burden at trial.  [*See id.*, Record No. 22]  The Court granted the United States' motion during a hearing held the following day.  [*Id.*, Record No. 23]

**B.      The Civil Forfeiture Proceeding**

On February 10, 2011, the United States filed this civil forfeiture proceeding concerning the currency seized from the Shelbyville, Kentucky residence.  [Record No. 1]  On April 18, 2011, Olvera filed a Verified Answer to Complaint for Forfeiture in Rem.  [Record No. 4]  Through this pleading, Olvera asserted that the currency seized from the residence on July 27, 2010 represented proceeds from the sale of certain livestock, farm equipment, and related materials she had inherited.[1]  [*Id.*, p. 3]  According to Olvera, her estranged husband had sold some of the property in Mexico in January 2010 and had been instructed to bring the proceeds back to Kentucky so that she could pay certain debts.  [*Id.*, p. 2]  Instead, she maintains, Olvera-Landaverde sold more than he should have, and then hid the proceeds in the residence.  [*Id.*, pp. 2-3]

Olvera submitted the affidavit of a third party, Francisco Medina Martinez, in support of her claim.  [Record No. 5]  According to Martinez, Olvera inherited property located in Aguascalientes, Mexico, from her father in 1980. [Record No. 5-1, p. 1] From January through April 2010, Enrique Olvera-Landaverde purportedly called Manuel Gutierrez in Tapias Viejas, Mexico, and directed Gutierrez to sell the cattle and agricultural equipment located on Olvera's property.  [*Id.*] Although the affidavit states that the total value of the assets belonging to Olvera and sold by Gutierrez was $89,200.00, the affiant does not state the purchase price actually

_____

[1]Olvera's summary judgment motion, as well as her response to the government's motion, indicates that copies of the deed to the ranch and photos of livestock are attached; however, those items apparently were not filed in the record.  [*See* Record No. 22 ¶ 8a, f; Record No. 24 ¶ 8a, f.]

received for the livestock or other items.  [*Id.*, p. 2]  Likewise, Martinez does not identify the source of his information.

Following resolution of the criminal charges filed against Enrique Olvera-Landaverde in this Court, the parties were given additional time to complete discovery with respect to the claim asserted by Olvera.  [*See* Record Nos. 12, 14, 16, and 18]  Olvera was deposed on May 23, 2012.  A copy of her deposition transcript is attached to the United States' Motion for Summary Judgment.  [Record No. 21-2]  Additionally, the United States has submitted the affidavit of Kentucky State Police Detective Eric Stone in support of its motion.  [Record No. 21-3]

## II.

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002).  A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party.  That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists.  *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008).  Once the moving party has met its burden of production, its opponent "'must do more

than simply show that there is some metaphysical doubt as to the material facts.'" *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Additionally, the nonmoving party cannot rely upon the assertions in its pleadings; rather, that party must come forward with probative evidence, such as sworn affidavits, to support its claims.  *Celotex*, 477 U.S. at 324.  In determining whether summary judgment is appropriate, the Court must review all the facts and the inferences drawn from those facts in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

As the parties indicate in their respective memoranda, this case is subject to the provisions of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), 18 U.S.C. § 983.  *See United States v. Real Prop. in Section 9, Town 29 N., Range 1 W. Twp. of Charlton, Otsego Cnty., Mich.*, 241 F.3d 796, 798 (6th Cir. 2001).  Under CAFRA, the United States bears the burden of establishing, by a preponderance of evidence, that the property in question is subject to forfeiture.  18 U.S.C. § 983(c)(1).  If the property is alleged to have been "used to commit or facilitate the commission of a criminal offense," the United States must further demonstrate "a substantial connection between the property and the offense."  18 U.S.C. § 983(c)(3).  Once the government has made the necessary showing, the burden is on the claimant to prove that she is an innocent owner of the property.  18 U.S.C. § 983(d)(1).

In this case, the United States contends that the currency found in the residence during the search conducted on July 27, 2010 is subject to forfeiture because it constitutes either drug proceeds or money used to facilitate a violation of the Controlled Substances Act.  *See* 21 U.S.C.

§ 881(a)(6).  The government bases its argument on the following undisputed facts: (1) the claimant reported that her husband, Enrique Olvera-Landaverde, was engaged in drug trafficking activities; (2) a search of the couple's residence was conducted shortly after Olvera reported these drug trafficking activities; and (3) 850 pounds of marijuana and $64,723.00 in United States currency were located within the residence.  Thus, the United States asserts, the Court may infer that the money was either drug proceeds or currency used to facilitate drug trafficking activities.  Olvera, however, raises another possible inference: the currency could be all or a portion of the proceeds from the alleged sale of her property hidden by her husband.

At the time its Complaint was filed seeking forfeiture, the United States submitted the affidavit of Scott McIntosh, a Task Force Agent with the Drug Enforcement Administration. After recounting his experience concerning drug trafficking investigations. Task Force Agent McIntosh states that the currency found in the residence "was furnished or intended to be furnished in exchange for a controlled substance and was proceeds of or used to facilitate a violation of the Controlled Substances Act." [Aff. of Scott McIntosh, Record No. 1-3, p. 5] This statement is based, at least in part, on his investigation of Enrique Olvera-Landaverde, which revealed that the suspect "had no legitimate source for the currency seized from his residence." [*Id.*, p. 4]  Based on the information set out in the affidavit, it does not appear that Task Force Agent McIntosh was aware that the currency found in the residence could have represented the proceeds of the sale of the claimant's property by the suspect.  During her deposition, however,

the claimant asserted that she provided this information to law enforcement on or about July 27, 2010.[2]  [*See* Olvera Dep. Tr., Record No. 21-2, pp. 33-34]

Moreover, although not dispositive, the Court considers the fact that the government did not obtain a conviction or admission in the criminal proceeding linking Enrique Olvera-Landaverde to any drug trafficking activities associated with the residence in Shelbyville, Kentucky.  The Court also notes that, while such an inference might eventually be reached based on the fact that Olvera-Landaverde had access to the residence at the time of the search and seizure, a number of other individuals apparently could have had access as well.  [*See id.*, p. 31]

Additionally, while little — if any — weight should be given to the affidavit of Francisco Medina Martinez regarding: (a) the sale of property in Mexico, (b) the price received for that property, and (c) conversion and migration of money from Mexico to the Shelbyville, Kentucky residence, the Court cannot conclude that there is no evidence to support Olvera's claim.  The answer filed by the claimant on April 18, 2011 is verified and does provide some evidence which could support a finding that the currency located in the residence represents proceeds from the sale of personal property belonging to Olvera.  [*See* Record No. 4 ¶¶ 5a-j.]

Likewise, in addressing the pending motion for summary judgment, the Court cannot conclude that Olvera's claims should be rejected because she did not discover the currency in the residence at the time she discovered the marijuana.  According to the claimant, she originally called the police after discovering what she believed to be evidence of cocaine trafficking

---

[2]Similarly, the affidavit of Eric Stone does not address Olvera's assertion that she alerted law enforcement to her claim to the currency shortly after the seizure of drugs, money, and other items on July 27, 2010.  [*See* Record No. 21-3.]

activities.  [Olvera Dep. Tr., Record No. 21-2, p. 8]  If, as the United States alleges, Olvera was aware that the currency was located in the residence at the time she discovered illegal drugs there, it is plausible to conclude that she would have taken the currency (believed to be the proceeds from the sale of her property) before calling the police.  In short, based on the information presented, inferences may be drawn both in favor of and against the position taken by the United States, as well as that of the claimant.  At this point, neither party has demonstrated entitlement to relief by a preponderance of the evidence.  Ultimately, resolution of this case may turn on questions of credibility that cannot be addressed at this time.  *Cf. United States v. $21,000 in U.S. Postal Money Orders*, 298 F. Supp. 2d 597, 605 (E.D. Mich. 2003) (because claimant "offered plausible rebuttal testimony against the Government's evidence, a genuine issue of material fact exist[ed]" and "require[d] submission of [the] matter to a trier of fact.").

## III.

The Court cannot conclude that there are no unresolved issues of material fact pertaining to whether the subject currency represents the proceeds of the sale of cattle and other property owned by the claimant or, conversely, whether the money represents proceeds of or funds used to facilitate drug trafficking activities in violation of the Controlled Substances Act. Accordingly, it is hereby

**ORDERED** as follows:

(1)    The United States' motion for summary judgment [Record No. 21] is **DENIED**.

(2)     Claimant Maria Olvera's Motion for Summary Judgment [Record No. 24] is

**DENIED**.

This 21st day of August, 2012.



Signed By:
*Danny C. Reeves*
**United States District Judge**